## Kemp, *ex dem.* Pollard's heirs v. Thorp, *et al.*

1. The Congress of the United States does not possess the constitutional power to grant the shore of the navigable waters in this State. The cases of *The Mayor, &c. of Mobile* v. *Eslava,* and *Hagan, et al.* v. *Campbell and Cleaveland,* explained and re-affirmed.

Writ of error to the Circuit Court of Mobile.

THE facts of this case are substantially the same as those of The Mayor, &c. of Mobile v. Eslava, 9 Porter's Rep. 577, and Doe *ex dem.* Pollard's heirs v. Files, at the last term.

BLOCKER, for the plaintiff in error, and STEWART and CAMPBELL, for the defendant, submitted the cause on the brief of the plaintiff's counsel.

COLLIER, C. J.—The questions arising in this cause, were so fully considered in the Mayor, &c. of Mobile v. Eslava, 9 Porter's Rep. 577, and Doe *ex dem.* Pollard's heirs v. Files, at the last term, that we should content ourselves by announcing a judgment of affirmance, were it not for a remark or two in the brief of the plaintiff's counsel, which induces the belief that the case first cited, as well as the earlier decision of Hagan, *et al.* v. Campbell and Cleaveland, 8 Porter's Rep. 9, have been misapprehended. These cases, it is supposed, are in conflict with each other. In the latter, the only questions raised in ar-

gument were, whether the southern boundary line of the land in controversy, should run due east to the channel of the Mobile river, or should diverge so as to accommodate other riparian proprietors, who might otherwise be injured in consequence of the meandering of the stream ; or whether the eastern boundary extended beyond high water mark. No objection was made to the validity of the Spanish grant, as confirmed by Congress. The confirmatory act passed between the periods providing for the admission of Alabama into the Union, and the formation of her constitution, and the Court regarded it as conceded, that the grant was operative to the extent which its terms indicated ; and these we considered sufficient to transfer the shore. In The Mayor, &c. of Mobile v. Eslava, neither of these questions were presented for decision. We there examined, whether the King of Spain had the right to grant the shore of the navigable waters within his American possessions, and whether the Congress of the United States possessed a similar right over the shore of the tide waters of this State, after her admission into the Union. A mere statement of the points adjudicated in these cases, will be quite sufficient to show, that the suggestion, that they are not in harmony with each other, is entirely unsupported by any thing found in the opinions of this Court.

It is further intimated, that the opinion of this Court in the latter case, asserts the principle, that by the admission of Alabama into the Union " on an equal footing with the original States," the Government of the United States *ipso facto,* relinquished to her all the unappropriated lands within her limits.— This intimation will be found to be utterly unsustained, when the case is fully examined and fairly criticised. At the time the opinion was prepared, we were aware this question was one about which statesmen differed, and distinctly recollected that it was debated in the Senate of the United States in 1828. This consideration, as well as the additional reason that the point did not necessarily arise in the cause, were quite enough to prevent us from performing a task so unwise and profitless, as to adjudicate an abstract question of political law, which involved millions of property.

The correct mode of criticising a judicial opinion, is, not to take up isolated sentences, or detached paragraphs, but to examine the points presented, and then consider the entire argu-

Kemp, *ex dem.* Pollard's heirs *v.* Thorp, *et al.*

ment of the Court. Any other course might be exceedingly unjust, as the qualification of a general remark, may either precede or follow it.

The argument of the Court in The Mayor, &c. of Mobile v. Eslava, was intended to show that the shore of the tide waters in this State (to borrow a term from the civil law) was withdrawn from commerce, and dedicated to the public use. This conclusion was attempted to be sustained. 1. By the acts of Congress, regulating the survey and disposal of the public lands, as well as the act providing for the establishment of a territorial government. The laws in regard to the surveys, clearly indicate that the shore of the navigable waters were not to be surveyed. The act of 1803, providing for the disposal of lands South of Tennessee, declares *in totidem verbis,* "that all navigable rivers within the territory of the United States, south of the State of Tennessee, shall be deemed to be and remain public highways;" and the ordinance establishing a territorial government, contains a similar provision. 2. The act of March, 1819, to enable the people of the Alabama territory to form a constitution and State government, and for the admission of such State into the Union on an equal footing with the original States," declares that "all navigable waters within the said State, shall forever remain public highways, free to the citizens of said State, and of the United States, without any tax, duty, impost or toll therefor, imposed by the State." Alabama being admitted into the Union "on the same footing as the original States, in all respects whatever," without a reservation by Congress of a property in her navigable waters, or the soil covered by them, she must be considered as having the same interest in them, "as the original States" have in their tide waters; which interest is uncontrollable by the federal government, except so far as it may be necessary to enable it to exercise its constitutional powers. This conclusion was supposed to result from the previous acts of dedication by Congress, both express and implied, and the terms in which the reservation in the act of March, 1819, of a right of use by the public, in the navigable waters of the State, is expressed. There, it is declared, that the navigable waters of the State shall forever remain public highways, free to its citizens, &c. The omission to stipulate for a right of property, was regard-

ed as satisfactory to show, that a mere easement was reserved, or in other words, it proves there was to be no other limitation to the right of the State over the subject, than that which is expressed. *Expressio unius, exclusio est alterius.*

What is said by the Court of a property in the shore passing to the State upon its admission into the Union, cannot, when fairly interpreted, be understood to mean the absolute ownership, but merely the right of jurisdiction and control, subject to the paramount right, which is repeatedly conceded to the public, and which the United States may protect.

It is difficult to give an intelligible view of the argument in the Mayor, &c. of Mobile v. Eslava, in the short space we have occupied, but what we have said, will serve to repudiate the infernce drawn from the opinion.

Whether an admission of a State into the Union, *on the same footing as the original States,* means any thing more than an equal participation in political rights and privileges, is a question never presented for our consideration, or examined by us. Some disconnected sentence or paragraph may perhaps be supposed to claim for these terms, a more extensive meaning, but when considered in reference to the subject matter and the context, the extent of their operation it will be seen, has not been decided; and we are quite sure, that in no opinion of ours, have we accorded to them greater potency, than did the Supreme Court of the United States, in New-Orleans v. The United States, 10 Peters' Rep. 736. Our object in saying thus much was, only to disabuse the plaintiff's counsel, and others who may have fallen into a similar error; and we have only to add that the judgment of the Circuit Court is affirmed.