GILDERSLEEVE v. CARAWAY, use, &c.

1. Proof of what a deceased witness swore to on a former trial, is admissible, and the party offering it cannot be required to prove the precise language used by the deceased witness　But the witness must be able to state, the entire substance of what the deceased witness swore to, both on the examination in chief, and on the cross-examination, if there was one, and if he is not able to do this, the testimony must be rejected.

Error to the Circuit Court of Mobile.

Assumpsit by the defendant, against the plaintiff in error, on a promissory note, negotiable and payable in bank.

From a bill of exceptions found in the record, it appears, that the defence set up by the defendant was, that a judgment was obtained against him, by the State Bank, as a debtor of Caraway, by process of garnishment, for the amount of the note sued upon, which judgment he had satisfied. The plaintiff then introduced a witness, who proved, that he was present at a former trial of this cause—that one James Martin, since, deceased, was examined as a witness—that upon his examination in chief, he swore that he had given notice to Gildersleeve, of the transfer of the note to Rhodes, the beneficial plaintiff—that Martin was then subjected to a long and excited cross-examination, in the course of which many questions were propounded to him, touching facts connected with his possession of the note, and his giving notice to Gildersleeve of its transfer to Rhodes; and that the said Martin swore distinctly, and positively, that he had given such no-.

tice to Gildersleeve, before he was summoned as garnishee. The witness, upon his cross-examination, admitted that he did not pretend to recollect the whole of the substance of the testimony, relative to the giving of the notice by Martin, that the note had been transferred to Rhodes by Caraway. The defendant thereupon moved the court, to exclude the testimony of the witness from the jury, which the court refused, and the testimony went to the jury.

The plaintiff offered James Rhodes, the beneficial plaintiff, to prove that one John Rhodes, whose name appeared as a witness to the assignment made by Caraway, under seal, to the beneficial plaintiff of the note in suit, was a resident of North Carolina, which was objected to by the defendant, but admitted by the court—and upon proof of the hand-writing of Caraway, read an assignment under his hand and seal, dated February 7th, 1839, whereby he transferred to Rhodes all his interest in the note in suit.

The court then charged the jury, that if Gildersleeve previous to, or at the service of the garnishment, had notice that the note now sued on had been transferred to Rhodes, then the payment by him, on the judgment against him as garnishee, was no defence to the present action.

The defendant moved the court to charge, that as Caraway was the plaintiff of record, the defendant was entitled to the benefit of the judgment he had discharged which the court gave, with the qualification, that whether he was entitled to be allowed such payment, depended on the fact, whether he had notice of the transfer of the note, at, or previous to the service of the garnishment; if he had such notice, the payment would avail him nothing.

Further, that as the note had been transferred by deed of assignment to Rhodes, the action could not be maintained in the name of Caraway, which the court refused, and the defendant excepted, and now assigns these matters as error.

CAMPBELL, for plaintiff in error.
W. G. JONES, contra.

ORMOND, J.—The only question necessary to be considered is, the propriety of the admission of the testimony of

what the deceased witness, Martin, swore to, on the former trial of this cause; the other points made being determined by the previous adjudications of this court, as shown by the citations of the counsel for the defendant in error.

It is the settled rule of the law of evidence, to permit testimony of what a deceased witness swore to, on a former trial of the same cause, between the same parties. In England, formerly, and in some of the courts of this country, it has been sometimes held, that the precise language of the deceased witness must be deposed to; but this strictness has been relaxed, at least in this country, if not in England, and the rule as now established, is, that it is sufficient if the witness can state the whole of the substance of what the deceased witness swore, although he cannot give his very words. [Caton v. Lenox, 5 Rand. 36; Bellenger v. Barnes, 3 Dev. 460; Wolf v. Wyeth, 11 S. & R. 149; Watson v. Gilday, Id. 337; Cornell v. Green, 10 Id. 15.]

This places this species of evidence on a rational foundation, because, to require the very words of the deceased witness, would be in effect to abrogate the rule. Even if the precise language were used, it would in many cases be in the power of the narrator, by laying an improper emphasis on particular words, to give the sentence a meaning not intended by the speaker, so that at last it comes to this, that where such testimony is admitted, the substance of what the deceased witness swore to, is all that can be, or ought to be demanded.

But the entire substance of what the witness swore to, both on the examination in chief and on the cross-examination, must be given by the witness, professing to detail it, otherwise it must be rejected. The propriety of requiring the substance of the whole testimony, is quite apparent, when we consider the foundation of the rule, and the reason for the admission of such testimony.

It is admitted from the necessity of the case, and to prevent a failure of justice—a necessity, which has not been caused by the act of the party offering it. Although this necessity justifies a departure from the strict rule, and authorizes the introduction of secondary evidence, yet care must be taken that the other party is not prejudiced by it, as he is in no de-

Gildersleeve v. Caraway, &c.

fault. He has therefore a right to demand, that the secondary evidence shall be legal, and be so satisfactory as to enable the jury, without danger of mistake, to render their verdict in the same manner as if the original witness had been again produced. If this is not done, he is, or may be, prejudiced.

In this case, the witness very satisfactorily swore to the substance of the examination in chief; he also states, there was a long and excited cross examination, in relation to the giving of the notice of the transfer of the note to Rhodes; and the witness admitted that he did not recollect, or pretend to recollect, the whole of this cross-examination, relative to the giving of the notice. Now, in our judgment, it is perfectly obvious, that if this testimony is received, as a substitute for that of the deceased witness, the plaintiff is deprived entirely of the benefit of his previous cross-examination. The manifest purpose of that examination was, to impeach, either the integrity, or the recollection of the witness. Two facts were especially material—the fact of the notice, and the time when it was given, and if the plaintiff is deprived of the benefit of this cross-examination, how can he show by other proof, that the witness was mistaken, or swore incorrectly. The witness admitted in effect, that the cross-examination had faded from his memory, and his whole recollection of the matter now, is, that the deceased witness swore distinctly, and positively to the fact of the notice before the service of the garnishment. The remarks of the court, in Wolf v. Wyeth, and Watson v. Gilday, cited previously, are exceedingly just, and applicable to this case—to receive this testimony, as a substitute for that of the deceased witness, would be in effect to deprive the plaintiff of the benefit of his cross-examination.

It has been strongly urged, that we should not multiply exceptions to a well established rule, by which the rule itself would finally be stifled, and rendered nugatory; but it must be recollected, that the rule here invoked, is itself an exception to the rule, that hearsay is not evidence, and that whilst we give effect to the exception, it is our duty to take care, that it does not go beyond the necessity which gave it birth.

There is a striking analogy between this species of evidence, and the secondary evidence allowed of the contents of a lost writing. Although it is clear law, that in such a case the contents of the lost instrument may be proved by parol, and that the party will only be required to prove its substance, and cannot be held to a literal proof of its contents, yet if he cannot prove the substance of the writing, he must lose the benefit of his testimony. In Taylor v. Riggs, 1 Peters, 600, in reference to such a case, and where a witness had sworn to his belief, and impression, of the contents of a lost instrument, Chief Justice Marshall says, "the substance of the agreement ought to be proved satisfactorily, and if that cannot be done, the party is in the condition of every other suitor in court, who makes a claim which he cannot support." So in this case, the law permits the party to prove the substance of what his deceased witness swore to on the former trial; if he is unable to do this, it is no reason for relaxing the rule. It may be difficult in such a case as this, to make the proof, but that affords no excuse for dispensing with it. If the witness had died before his examination, or had become incompetent from any cause to testify, the party would be in the same condition he is now in; yet, certainly, that would have afforded no ground for the admission of inferior evidence of the fact.

In conclusion, we are fully satisfied, that in this case the secondary evidence offered was not admissible, because the witness admitted he could not recollect all the substance of the cross-examination, upon the point in issue.

Let the judgment be reversed and the cause remanded.