JANUARY TERM, 1853. 699.

Magee v. Doe ex dem. Hallett & Walker et al.

## MAGEE *vs.* DOE EX DEM. HALLETT & WALKER ET AL.

1. When the boundary lines of a grant are fixed by the grant itself, the question as to what are these lines is purely one of law.

2. The plat or plan of the Collins survey, as corrected by Pintado, which accompanied the Orange Grove grant, was a part of the grant itself; and the grant is for all the lands included within the lines of this survey, extended without variation to the channel of the river, or low water mark.

3. The Orange Grove grant having been confirmed by act of Congress of March 3, 1819, as a perfect title, courts of justice are bound by that action, to the extent of the recognition, and are concluded, at least in a collateral proceeding, from any inquiry which might have the effect of avoiding or impairing any rights which accrued under the act of confirmation.

4. The lines fixed by the corrected Collins survey, accompanying the Orange Grove grant, are obligatory on the United States and all claiming under them since the act of confirmation, and cannot be impeached or changed by any evidence tending to show that these lines were incorrectly located, either by mistake or fraud on the part of the Spanish Government or its officers, prior to the date of the grant.

5. In determining the riparian rights, as to reclaimed lands in the city of Mobile, of a proprietor claiming under a Spanish grant confirmed by act of Congress as a perfect title, where the lines of the grant by its terms extended to low water mark at its date, the lines should be drawn from the termination of the river lines, as they existed at the date of the grant, perpendicularly to the channel of the river.

6. Where the location and survey of an incomplete Spanish grant, made under the provisions of the act of Congress confirming it, recognizes and adopts one

700       ALABAMA.

Magee v. Doe ex dem. Hallett & Walker et al.

of the lines of another grant, as one of its boundary lines, and the parties agree to such survey and location, the grantees and the United States are mutually bound and estopped by it from disputing that line.

7. Where the Mobile river formed the eastern boundary of an incomplete Spanish grant, and the act of Congress confirming the grant was passed after the admission of Alabama into the Union, the lines of the grant could extend only to high water mark at that time.

8. Where the evidence of a deceased witness is offered, the substance of his whole testimony must be proved; if any parts of it are irrelevant, the court may reject them, but the witness cannot determine upon the relevancy of the portions which he omits to prove.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. JOHN BRAGG.

EJECTMENT for a lot of land situated in the city of Mobile, being a portion of the lands reclaimed from the river. The location of the tract is shown by the following diagram, in which B represents an iron-bound stake at the margin of the swamp and highland, and C an iron-bound stake on the ancient margin of the river.

The plaintiffs below deduced title through two Spanish concessions; one to Alexander Baudain, dated July 10, 1798, and confirmed by act of Congress of March 8, 1822; the other to Thomas Price, dated November 18, 1798, and confirmed by act of Congress of March 2, 1829. The defendant relied on a Spanish grant to John Forbes & Co., dated Sept. 25, 1807, and confirmed by act of Congress of May 3, 1819; and the principal question on the trial below was, whether the premises sued for were included within the limits of the grants from which the plaintiffs derived title.

The Price claim, according to the patent and the survey made by John James in 1836, which was offered in evidence by the defendant, had no river boundary, the east line running in a zigzag course near the ancient margin of the river, and the northern boundary being the south line of the grant to Forbes & Co. The Baudain claim was founded on a permission to settle, and is thus described in the original petition: "A vacant tract of land, situated to the northeast of Mobile, fronting the east side of Royal street five perches, and extending back east to the Mobile river, bounded on the north by Terry's lands, on the west by Royal street, on the south by St John street, and on the east by Mobile river." The concession was for the lands embraced in the petition. "Terry's lands," referred to in the petition, appear to have been covered by the grant to Forbes & Co., so that the Baudain grant was bounded on the north by the south line of the grant to Forbes & Co.

The grant to Forbes & Co., called also the "Orange Grove" grant, may be found in the statement of the case reported in Hagan v. Campbell et al., 8 Porter 9, and Hallett & Walker v. Hunt, 7 Ala. 882; it recites, in substance:

1. That the land was surveyed by Joseph Collins in 1802;

2. That the Fiscal Minister had reported that William Panton, a partner of the house of Forbes & Co., had acquired these lands by purchase from William Richardson, who had obtained them by grant from the British government in 1767; that Forbes & Co. had possessed them, and were entitled to be confirmed in them without molestation from the crown of Spain;

3. That Pintado, the Surveyor General, had corrected the map of Collins, and caused it to be recorded;

702               **ALABAMA.**

Magee v. Doe ex dem. Hallett & Walker et al.

4. That the lands in front should be conceded, extrinsic of the lines, and without any alteration of the figure of the tract.

The record shows that William E. Kennedy and Joshua Kennedy were the proprietors of the Baudain and Price grants; that William E. died in 1825, and Joshua in 1838; and that partition of their lands was made, and the land in controversy assigned to the heirs of William E., who are named in the declaration as the lessors of the plaintiff.

In relation to the location of the premises, after the plaintiffs had introduced the Price grant, survey and patent, and the Baudain grant and survey, they offered evidence conducing to prove that, about the year 1829 or earlier, Water street was opened from St. Louis, (formerly St. John,) to St. Anthony street, and continued to State street; that the river, at the ordinary tides, was excluded from the *locus in quo* by these improvements, west of Water street; that the *locus in quo* lay to the east of the east line of the Price patent, between it and the river; and that if the Baudain claim was extended fifty perches on Royal street, and surveyed to the river, according to the course of the channel, north 83 degs. east, to the north point on Royal street, it would embrace the premises sued for.

The defendant below offered in evidence the grant to Forbes & Co., the report of the United States commissioner thereon, and the certificate of confirmation, which are all made part of the bill of exceptions; he then proved, by the register of the land office at St. Stephens, the survey of this tract made in 1835 by Andrew Henshaw, and the survey of the Price claim made in 1836 by John James, both of which surveys were approved by the surveyor general of the United States; also, that the survey of the Price tract made by James Dowell had never been recognized; that the lands granted to Forbes & Co. had been sold under a decree of the Court of Chancery of Mobile in 1831, on the application of James Innerarity, one of the partners, and a deed to the lands made to defendant in 1831 under the decree and sale.

To prove the occupancy of the lands granted to Forbes & Co., and the facts of its boundary, the defendant offered to read the statement of James Innerarity, as set forth in the bill

of exceptions in the case Doe *ex dem.* Hunt v. Hallet & Walker, 7 Ala. Rep. 882. And to show its competency, he offered the evidence of Geo. N. Stewart, who deposed, that he was counsel for the defendants in that case; that the premises sued for were the same; and that the plaintiff's lessors in the present case defended that on the title of Joshua Kennedy. He also stated, that he prepared the bill of exceptions in that case with great care, and had no doubt that it was strictly accurate and contained the substance of all Innerarity's testimony in relation to title; that said Innerarity might have been examined in relation to damages, or other matters irrelevant to the title; that he could not undertake to state the substance of his testimony relating thereto, and could not say that he remembered the substance of all his testimony relative to the points connected with the title. Defendant also proved, that the lessors of the plaintiff in that case were the landlords of the present defendant, and that said Innerarity had died some time before. The plaintiff objected to this evidence, and the court sustained the objection; to which defendant excepted.

To establish the south line of the Forbes & Co. grant to be according to Henshaw's survey, the defendant introduced a witness, who testified, that the line run by Collins was a marked line, well defined in 1808–9 or 10; that it was recognized in Spanish times, and that Forbes & Co. claimed it; that this was also the line run by Henshaw; that Dowell surveyed the tract for Innerarity, at the time of his sale under the decree in chancery, and that the same line was then followed; that the same line had been surveyed for the Kennedys in 1823 or 1824; that the line mentioned in Kennedy's patent for the Price tract, was the same line, and that it was marked by posts set up by the United States surveyors, as shown by their surveys. Defendant also proved, that Joshua Kennedy had procured the survey made by John James in 1836; that said Kennedy was well satisfied with it, urged its adoption in the land office, and procured the patent certificates and patent of the Price claim, which he had recorded in 1837 in the County Court of Mobile; that in all of his surveys, said Kennedy had used and fixed this line as the north line of the Price tract, and that his claims in the land office recognized it.

The defendant also offered various deeds, for the same object, and a map of 1817 of the two Kennedys; he further proved the admission of Kennedy's executors, in an answer to a bill in chancery, that Joshua Kennedy had never procured a location or survey of the Baudain grant, but claimed the lands embraced by it under his Price patent; and then read the declaration of the Chancellor upon that subject, from the decretal order in the case of Kennedy's Executors v. Kennedy's Heirs, 2 Ala. 571. He also proved, that the land to the line of Henshaw in 1835, and bounded upon it west of the iron-bound stake, had been divided into small city lots, and sold by the proprietors of the Forbes & Co. tract; that the purchasers had held, without disturbance or objection from Kennedy or his representatives, since; that if this line was extended, without deflection, to the channel of the river, it would embrace the premises sued for; and also offered evidence conducing to show that such would have been the case in 1807 and in 1819.

For the purpose of rebutting this evidence, and of showing that the lands of Forbes & Co., as described in the British grant, and referred to in the Spanish grant, did not correspond with the Spanish title, and that the lines had either not been properly marked by Collins, or had been fraudulently altered by him at the time of his re-survey, and that the lines of the British grant had been fraudulently removed south of their original location, the plaintiffs offered evidence tending to establish these facts. This evidence was objected to by the defendant; but his objection was overruled, and he excepted.

The defendant's counsel asked the court to charge the jury as follows:

1. That if they believed that Collins, the Spanish surveyor, marked on the ground a line as the south line of the Forbes & Co. or Orange Grove tract, and distinguished the same by posts and marked trees, and that this line was claimed by Forbes & Co., and was recognized in the private deeds, public surveys, maps, patent certificates, and patent of the Kennedys, as the adjoining proprietors, then the said line was the true south line;

2. That if William E. Kennedy and Joshua Kennedy, during the time they held the Baudain and Price claims, recog-

nized a line in their surveys, maps, conveyances and claims in the land office, as the true south line of the Orange Grove tract, and received a patent for claims ascertaining the line aforesaid, and that this was the same line surveyed to Forbes & Co., by which that house and the persons under it claimed, then the said evidence was conclusive as to location.

The court refused these charges, and charged the jury, that the true south line of the Forbes & Co. grant was to be ascertained from all the evidence in the cause; that the acts and declarations of the parties were evidence of a very high description as to the true position of that line, but the Kennedys were not estopped by such evidence from ascertaining the true line; that if the jury found the south line to be as contended for by defendants, it would continue to low water mark, as it existed at the date of the grant; if the line was above the location contended for on the river, it would be continued in the same manner; and if it embraced the land in dispute, their verdict must be for the defendant; that the defendant's line would go to the same point on the line of that grant, in any event, and would proceed from thence in the nearest and most direct line to the river.

To the refusals to charge as requested, to the charges given, and to the several decisions upon the evidence, the defendant excepted, and now assigns them for error.

JOHN A. CAMPBELL, for plaintiff in error:

There were four pieces of testimony offered on the trial by plaintiffs, and objected to by defendant, which are open to one common objection, while each is substantially objectionable on grounds peculiar to itself. The motive announced for the introduction of this testimony cannot be indulged. The grant of the British government is recited in the Spanish grant, as exhibiting the descriptive marks contained in the plan of Collins; that this was ascertained by the Collins survey; and that the grant of the Intendant General confirmed and ratified to Forbes & Co. the land as set forth in his map. The British grant, then, if it had constituted the basis of the title, and could be referred to to control it, could not be ascertained by argument from the British Colonial regulations, but must be ascertained from the production of that grant.

706                 ALABAMA.

Magee v. Doe ex dem. Hallett & Walker et al.

The Spanish grant is the best and only evidence of that grant; and its recitals are conclusive, because the act of Congress of March 3, 1819, recognizes that claim and grant "as valid against the United States, and all claims derived from the United States." "The act of 1819 expressly recognizes, that is, acknowledges, the grant to Forbes & Co. to be a valid and complete title against the United States, or any right derived from the United States. It does not confirm and impart to it validity, but admits that, per se, it possessed this quality; that independently of the legislation of Congress, it operated proprio vigore." 7 Ala. 898. The Supreme Court of the United States, speaking of this grant, say: "Recognized and confirmed by Congress, by the act of 1819, the courts of justice are concluded by the action of the political department, and bound to pronounce it a perfect title, in substance as well as form, because the claim was within the exclusive jurisdiction of the political department in 1817, when Congress acted on it." 7 Howard's U. S. R. 592.

This action of the two governments severed the specific parcel of land described in the grant, from the public domain, and vested it in Forbes & Co. All parties are estopped from denying that the grant was valid and operative; and parties claiming after the passage of the act of 1819, are, by the very language of that act, bound. 2 Howard 345; Chastang's Heirs v. Dill, 19 Ala. 421; 8 Howard 293. The act of Congress, by its very terms and its legal effect, operates as a new grant to Forbes & Co., and adopts all the recitals in it. The recitals bind all persons who do not claim by a paramount title. 10 Mass. 155; 3 Pick. 224; 4 Peters 1; 6 ib. 598; 11 Howard 297. This act cannot be impeached in a collateral proceeding. Whether it can be impeached at all, in a judicial proceeding, is doubtful; but if so, it must be by the orders of Congress, and upon a direct proceeding to invalidate the grant: it is as conclusive as a judgment. The case in 10 Howard 442 shows a very strong case of fraud and injustice, from all inquiry into which the Supreme Court held itself precluded.

There are also separate objections to each parcel of this evidence. 1. We object to the introduction of William E. Kennedy's mortgage, for the reason that a person in possession of land, under a valid title, who receives a mortgage to

JANUARY TERM, 1853.                    707

Magee v. Doe ex dem. Hallett & Walker et al.

secure a small debt, of a large parcel of land comprising a small portion of his own so held, and who asserts no possession or claim under that mortgage, and finally recovers his debt, and discharges his mortgage, affords no evidence against himself, and for a much stronger reason, against his partners and co-tenants, as to the boundaries of the land claimed under his own title.   2.  We object to the Spanish papers, because they were not authenticated, nor was any connection shown between them and Forbes & Co.; and for a stronger reason, because the previous inquiries and discussions relative to the location of the Forbes & Co. grant, were merged in the grant itself.   3.  We object to the British regulations, and the experimental surveys made under them and given in evidence, because it was not shown that the grant to Richardson was one of the kind specified in those regulations, or that those were the only regulations in the colony, or that the British government ever cancelled his grant, or that the Spanish government was deceived, or that the United States government did not understand all this matter.   4.  The Lorent grant was surveyed after the Orange Grove grant.   Its southern boundary is the Orange Grove grant, and that grant is referred to in it as a marked and defined grant.   It is not pretended that the surveyor followed the line of that grant: he selected a point arbitrarily, and ran the distance set down in the Lorent grant.   That distance was not a controlling call.   The line of a tract of land may as well be the subject of a call, as a natural object: it is as certain as a tree.   4 Har. & J. 163; ib. 457. Where land is described as running a certain distance to an ascertained line, though without a visible boundary, such line will determine the admeasurement and extent of the grant. 6 Ala. 738; 8 ib. 279; 13 Wendell 300.   When the lines or courses of an adjoining patent, being sufficiently established, are called for in a patent or deed, the lines should be extended to them, without regard to distance.   The Lorent grant would have gone to the Orange Grove boundary, without regard to calls for distance.   The attempt was, to change the location of the Orange Grove line by taking the least certain calls of a junior grant, and the least certain call of its own.

The first charge requested was legally correct, and should have been given, as is obvious from what has been already

said. It assumes, that the line surveyed by Collins, and distinguished by land marks, claimed by Forbes & Co., recognized by the United States, acquiesced in and acknowledged by the Kennedys, was the controlling line of location. It is in consonance with the law, as recognized and settled by this court and the Supreme Court of the United States. 4 Ala. 576, 583; 7 ib. 889; 9 Howard 451; 6 Peters 449; 1 Richardson 491.

The proposition asserted by the second charge asked, is equally supported by law and authority. Kennedy's claims refer to an ancient date: his maps and surveys recognizing this line, are a quarter of a century old; the United States survey for him, marking this line with his consent and approbation, was eighteen years old; his patent had issued thirteen years before the trial; possession for thirty years and more had been confidently taken, up to the line claimed in this case. The fact, then, was beyond dispute. One circumstance is sufficient. 8 Howard 313. The government survey is conclusive in such a case; "as the parties agreed to the survey, they are mutually and respectively bound by it." Ib.; 11 Ala. 64. The other acts contained in the evidence, and enumerated in the charge requested, were sufficient to justify the conclusion. 4 Ala. 576; 4 Wheaton 513; 5 Mason 16; 16 Wendell 285.

The charge given was erroneous. The construction of the grant which fixes a line, and determines the person who made it, is given to the jury. They were not to take the Collins line, with all the corroborative evidence of its location; but to wander at large, in search of a south line considered by them to be the true line. The charge was further erroneous, in telling the jury that a Spanish title incomplete in 1819, and unconfirmed until 1822 or 1827, should go to low water mark as it existed in Spanish times, and then go off at right angles to the river. The recognition in 1819 by the United States, of the Orange Grove grant, was equivalent to a regrant, and the lines would extend in a right line to low water mark at that date. The decisions of this court, and of the Supreme Court of the United States, are uniform in holding that no Spanish grant since 1800, and no confirmed grant since 1819, will carry the grantee below high water mark in

JANUARY TERM, 1853. 709

Magee v. Doe ex dem. Hallett & Walker et al.

1819. Pollard's Heirs v. Hagan, 3 Ala. 291; Abbott v. Kennedy, 5 ib. 393; 3 Howard 212; 9 ib. 471. The grant to Forbes & Co. was confirmed before the admission of Alabama into the Union, and by express terms goes to low water mark. 8 Porter 9; 7 Ala. 882. The Pollard grants and confirmations were all subsequent to the admission of Alabama into the Union, and were held to convey no right. It did not follow that the lines of Kennedy's title went to low water mark, because the lines of the Forbes & Co. grant were to be thus extended. The Price patent had no river boundary; the east line called for monuments according to course and distance; and this court held, in 1 Ala. 64, that the lines could not be extended or enlarged, or embrace property in front of it and between it and the river. The Baudain claim was identical with that of Price, and Kennedy held under the latter, and repudiated the former.

The testimony of Innerarity as detailed in the case in 7 Ala., should have been admitted upon the proof made by Mr. Stewart. All the witness said on the matter of title, was recorded; the other matters were unimportant, and irrelevant to the issue. The rule laid down by this court in 10 Ala. 260, was substantially complied with.

P. HAMILTON and WM. G. JONES, contra:

The plaintiffs below relied on their ancient possession, the Price title, and the Baudain title; so that a new title is now before the court, which was not presented in any of the previous cases. The Baudain and Price titles have been surveyed and located; a patent was issued on the latter, but none on the former; no patent, however, was necessary, as the act of confirmation of 1822 is itself a patent, and conveys a good title without more. Armstrong v. Chastang, 20 Ala. 609; 7 ib. 882; 19 ib. 421; 10 Howard 174. The Baudain title calls for the river as its eastern boundary, for St. Louis street south, Royal street west, and the lands of Forbes & Co., or Terry on the north. This title extended north on Royal street fifty perches, would cover the locus in quo. The north boundary of the Price claim is the line of Forbes & Co. The landlords of the defendant insist, that the land sued for is within their lines; the plaintiffs claim it as riparian proprie-

tors, under one or the other of their titles; they claim that the *locus in quo* is below low water mark in 1807, and in front of their lands under both their titles, and therefore belongs to them under the decisions in 8 Porer 9; 7 Ala. 882; 6 Mass. 439; 6 Pick. 158. They claim to be adjoining proprietors with the defendant's landlords, and insist that their adversaries have brought their line too far south.

The question, then, is a question of boundary, and nothing else; it is a question of fact, to be determined by the jury. 7 Ala. 882; 2 Dana 2; 1 Hawks 45; 4 ib. 64, 116; 1 Dev. & Bat. 425; 1 Har. & J. 115, 201; 4 ib. 1; 4 Ala. 581. The location of land and lines, and whether lines were ever marked, and if so where, are questions of fact for the jury, and not of law for the court. Wooster v. Butler, 13 Conn. 309; 2 U. S. Digest 141 § § 545, 547.

It is said that the plaintiffs below were estopped from disputing the Collins and Henshaw line, by the sanction of that survey in the land office, or by the acts, deeds and admissions of Joshua Kennedy. The decision of the court below on the former trial, affirmed by this court in 7 Ala. 883, is conclusive upon this point, and shows that we were not estopped. The defendants in that case insisted, that the government survey was binding, and asked the court so to charge; but it was refused. In the argument in this court, it was again insisted by plaintiffs in error, that the government survey was binding; and Mr. Campbell, then of counsel for the defendants in error, insisted, that the Orange Grove grant was a perfect grant, that no survey of it was necessary or authorized, that they were not bound by any such survey, and that, " as to the question of boundary, it was properly referred to the jury;" and the court so held. 7 Ala. 882 to 901. This is conclusive on the point. But, if it can be regarded as an open question, we insist that the former decision was correct, and supported by reason and authority. In support of this, we refer to the argument of Mr. Campbell in 7 Ala. 893, and the authorities there referred to. The line of Henshaw or of Collins was not conclusive, and plaintiffs below were not estopped by it. 7 Ala. 882, and cases there cited; Adams v. Rockwell, 16 Wen. 285; Boston & Worcester R. R. Co. v. Sparhawk, 5 Metcalf 469; Brewer v. B. & W. R. R. Co., 5 ib. 478; Owen v. Rockwell, 9 Pick. 520.

The objections made to the several Spanish documents offered in evidence, were properly overruled. They came from the proper custodian, and were admissible as ancients deeds, muniments of title more than thirty years old. 11 Ala. 1037–8; 12 Peters 654; 3 Phillips on Evidence, C. & H's. Notes 1311.

The deed of mortgage from Wm. E. Kennedy to James Innerarity, was properly admitted. It was made in 1817, when Kennedy was in possession of the Price title, and Forbes & Co. of the Orange Grove tract; the northern boundary called for by the deed, was the lands of Terry in 1817. This transaction between the two proprietors is certainly admissible upon a question of boundary. It was competent as a declaration by the parties, or as the statement of one party, admitted by the other; in questions of boundary, deeds between adjoining proprietors are admissible. 1 Metcalf 95; 9 Pick. 520; 3 N. H. 215; 1 Ala. 344; 13 ib. 21. Even hearsay and reputation are admissible. 6 Peters 341; 4 Hawks 116; 10 Conn. 13; 7 ib. 319.

The British grant to Richardson was made the basis of the Spanish confirmation in 1807, and was the foundation of the defendant's title below. That grant being indefinite and uncertain, it was obviously relevant and proper to admit the British Colonial ordinance of 1765, under which alone the grant to Richardson could have been made, and in conformity with which it is fairly presumable, if not conclusively, that it was made. It is part of the history of the country, that Great Britain acquired the territory in 1763, by the treaty of Paris, and ceded it to Spain by the treaty of 1783. The court will judicially know the laws and regulations which formerly prevailed in this territory. 11 Ala. 1041. The Spanish grant confirms the British, but gives no natural boundaries by which it can be designated. If an honest title, it would conform to the law under which it originated. By these British regulations, a grant of this description would have a river front of one third its depth, which would throw the south boundary line in this case twelve hundred feet north of where it now is.

The evidence of the surveyor was strictly proper, and he might explain his maps to the jury. He was testifying to

what he saw on the ground, and explained it to the jury by means of diagrams made by himself. 7 Porter 58.

The Lorent grant is referred to in the deed of Innerarity, under which the landlords of the plaintiff in error claim title, as the northern boundary of the Orange Grove grant. It and its lines were therefore admissible, to show the bounds of the British grant. Having a natural boundary, the Bayou Chautaque, it afforded the best means of ascertaining the other lines. 4 Ala. 581; 6 Cowen 717; 1 Marsh 96; 2 Lomax' Digest 210. The Lorent grant and Orange Grove grant were passing through the Spanish Commandant's office at the same time. The Lorent certificate is the older, bearing date March 1st, 1807, while the Orange Grove grant is dated September 14, 1807. What is the true boundary is the question; and this must be proven like any other fact. Parol testimony, the admissions of the parties, reputation and hearsay are permissible to establish it. 2 Marsh 158; 1 ib. 365; 2 Litt. 159; 13 Ala. 31; 6 Peters 341; 4 Hawks 116; 17 Conn. 355, 399. Acts and admissions were admitted below on both sides. We acknowledge the competency of this evidence; but it was not conclusive: it worked no estoppel. 9 Pick. 520; 10 Vermont 33; 18 ib. 395; 5 Metcalf 469; 16 Wendell 285. Such estoppel never arises, except where the parties, by special agreement, in a case of disputed boundary, have agreed upon a conventional line; or, where third parties have been induced to buy by their representation.

It was competent for plaintiffs below to impeach defendant's title under the Orange Grove grant. 11 Ala. 86, and authorities there cited; 9 Cranch 87; 11 Wheaton 380; 3 Howard 773. That grant rests upon the British grant, which does not cover this land. Whatever title exists, rests upon the Spanish grant of 1807. This grant was invalid, under the acts of Congress of 1804 and 1805. 2 U. S. Statutes, 283, 327. It is evident from the report of Commissioner Crawford, that in his opinion it was not a valid claim. The claim, therefore, lacks an essential element prescribed by the act of 1819, viz: the opinion of the Commissioner that it was valid. It is, therefore, still an invalid Spanish grant, and has no standing in court. A patent is a ministerial act, and is of no validity, if unauthorized by law. 2 Howard 285; *a fortiori*, of a certificate of confirmation. 9 Miss. 714.

The charges of the court were to the effect of the propositions hereinbefore stated. The superiority of the Orange Grove title was distinctly stated. The greatest weight was allowed to the evidence of the defendant below, as to the acts and admissions of the Kennedys. The charge is sustained by 9 Pick. 520, and 7 Ala. 882; in fact, the charges were read to the jury from the report of the latter case.

The testimony of Innerarity, as contained in the bill of exceptions in the case in 7 Ala., was properly excluded. Mr. Stewart was not able to give the substance of all his evidence. 10 Ala. 260; 7 Blackf. 10. To make this evidence admissible, the former trial must have been between the same parties, and for the same cause of action; the title involved must also have been the same. 8 Watts 536; 3 ib. 465; 9 Watts & Serg. 62; 6 Iredell 30, 196; 1 Call 487. Here the parties were not the same, and the title was not the same.

GOLDTHWAITE, J.—This was an ejectment by the defendants in error against the plaintiff in error, for a lot of land situated in the city of Mobile as shown by the diagram in the statement of the cause. The plaintiffs below claimed under two Spanish concessions to Alexander Baudain and Thomas Price; the first confirmed by act of Congress of May 8, 1822, (3 Statutes at Large 699;) and the other by act of Congress of March 2, 1829, (4 ib. 358.) Both these concessions were incomplete, and derive their validity entirely from the confirmatory acts referred to.

The defendant below relied upon a Spanish grant to John Forbes & Co. in 1807, commonly known as the "Orange Grove Grant," confirmed by act of Congress of March 3, 1819, (3 Statutes at Large 528.) This grant consists of two parts: 1. the certificate of the Surveyor General, and his accompanying map; 2. the grant by the Intendant General. The recitals in it are to the following effect:

1. That the land was surveyed by Joseph Collins, the Spanish surveyor, in 1802;

2. That the Fiscal Minister had reported that Panton, one of the partners of the house of Forbes & Co., had acquired these lands by purchase from William Richardson, who had obtained them from the British Government; that Forbes &

46

Co. had possessed them, and were entitled to be confirmed in them, without molestation from the crown of Spain;

3. That the Surveyor General had corrected the map of Collins, and caused it to be recorded;

4. That in addition to the lands included in the survey of Collins, the vacant lands between the river and the boundary lines of the land should be granted, without altering the figure of the tract on either of the other sides.

This grant has twice been before this court; and in Hagan v. Campbell et al., 8 Porter 9, it was held, that the plat or plan of survey which accompanied made part of the grant of 1807; and that the north and south lines of the original grant must be extended without variation, to the channel of the river; and that all the land lying east of said grant and the channel of the river, between such lines as extended, was conveyed by the Spanish grant to Forbes & Co. In Hallett & Walker v. Doe ex dem. Hunt, 7 Ala. 882, the decision on the last point was affirmed, and we are satisfied with its correctness. It was also held in that case, that the Spanish grant, under the operation of the confirmatory act, was valid and complete by itself, requiring nothing to be done to perfect it; that the recognition of its validity by Congress operated as a regrant, to the full extent of the concession, and that it was superior to any incomplete grant from Spain.

Keeping in view the recitals of the Orange Grove grant, and the decisions referred to, we proceed to an examination of the legal questions which are presented by the admission of the evidence, which was received by the court below against the objection of the plaintiff in error. It appears from the bill of exceptions, that the plaintiffs on the trial below, after deducing title through William E. and Joshua Kennedy, offered evidence tending to show that the premises sued for were embraced by the Price and Baudain grants. The defendant, in connection with the Orange Grove title, offered the survey of Henshaw, the United States surveyor, made in 1835, which was recognized in the land office; and to establish the south line of the Orange Grove grant to be according to that survey, he introduced evidence tending to prove that the south line, as run by Henshaw, was identical with the Spanish line marked upon the ground by Collins in 1802,

which was well defined and recognized as the line of that grant in Spanish times; that Forbes & Co. claimed to it; that the proprietors had sold by it; that the survey made for Joshua Kennedy had followed this line; that he had urged its adoption in the land office; that the line in the patent for the Price claim, which he had taken from the office and recorded in the County Court of Mobile, was the same line; that his claims in the land office recognized it, and that he had used and fixed it in all his surveys.

In order to rebut this evidence, and for the purpose of impeaching the line run by Collins, the plaintiff offered testimony tending to show that the south line of the Orange Grove grant, as run by Collins in 1802, and by Henshaw in 1835, did not correspond with the lines in the British grant, referred to in the grant to Forbes & Co., but was run too far south. This evidence was objected to by the defendant; and the principal question presented upon the record, is involved in the action of the court in overruling the objection thus made, and admitting the testimony. It has not been deemed necessary to refer to this evidence specifically, and in detail; its sole object was, to show that some other than the line run by Collins was the true southern boundary of the Orange Grove tract; the record shows that it was received for that purpose; and the only inquiry upon this branch of the case is, whether any evidence of this character was admissible.

As the construction of all written instruments belongs to the court, it follows, that when the boundary lines are fixed by the grant itself, the question as to what are these lines is purely one of law. Doe v. Paine, 4 Hawks 64; Cockrell v. McQuinn, 4 Monroe, 63; Hunley v. Morgan, 1 Dev. & Bat. 425. In relation to the Orange Grove title, the plat or plan of survey made by Collins in 1802, and corrected by Pintado, the Surveyor General, accompanied and made part of the grant, (Hagan v. Campbell, *supra;*) and by reference to this plat, which we understand to be before the court as part of the grant, it will be seen that the survey thus made can be identified by artificial marks and monuments; and the grant itself, according to the decisions before referred to, is for all the lands included within these lines, extended without varia-

tion to the channel of the river, or low water mark.   By the
first section of the act of Congress of March 3, 1819, it is pro-
vided, "that all claims to land, founded on complete grants
from the Spanish government, reported to the Secretary of the
Treasury by the commissioners from the districts east and west
of Pearl river, which are contained in the several reports of
the commissioners, and which are, in their opinion, valid, ac-
cording to the laws, usages and customs of said government, be
and are hereby recognized as valid and complete titles, against
any claim on the part of, or right, or demand from the United
States."   The effect of this section of the act was declared,
in the case of Hallett & Walker v. Hunt, *supra*, to be an ac-
knowledgment of the grant to Forbes & Co., as a valid and
complete title against the United States and all claiming un-
der them.   Conceding, for the sake of argument, that the
lines of the grant to Forbes & Co. did not correspond with
the lines of the grant to Richardson, that the Spanish title was
invalid or fraudulent; it was certainly within the power of
the political department of our own government to impart to
it validity ; and having done so, by recognizing it as a per-
fect title, courts of justice are bound by that action, to the
extent of the recognition, and are concluded from any inquiry,
at least in a collateral proceeding, which might have the
effect of avoiding or impairing any rights which accrued un-
der the act just referred to.   The Spanish grant, in effect,
called for all the lands included within the survey of Collins ;
its recognition by Congress appropriated to the grantees all
the lands embraced by it.   The lines thus fixed are, when
ascertained, obligatory on the United States and all claiming
under them since the confirmatory act of 1819, and cannot
be impeached or changed by any evidence tending to show
that these lines were wrongly located, either by mistake or
fraud on the part of the Spanish government or its officers,
prior to the grant in 1807 ; and any evidence which was
admitted with that object, and for that purpose, was inad-
missible.

But even if the British grant to Richardson controlled the
Spanish grant, and it were permissible to show that the boun-
daries of the former did not correspond with the lines run by
Collins, the grant itself, as being the best evidence, should

## JANUARY TERM, 1853.     717

Magee v. Doe ex dem. Hallett & Walker et al.

have been introduced; and not being introduced, the recitals in the Spanish grant became the best, and, indeed, the only evidence of the extent and boundaries of the British grant, and could not be disputed, except by those claiming by title paramount. Carver v. Jackson, 4 Peters 88; Crane v. Morris et al., 6 ib. 598.

We are satisfied, however, that the operation of the act of Congress confirming the grant to Forbes & Co., cannot properly be construed as conferring upon the grantees a greater quantity than was contained within the lines as ascertained and fixed by the Spanish grant in 1807. By the first section of the act, the Spanish title was recognized as complete; and although it operated virtually as a new grant, for all the lands included within the Spanish lines, it conferred a title to such only as would have been covered by that grant had it been perfect without the action of Congress. Its effect was, simply to confirm that title as a valid one, without conferring on the grantees any other or additional rights; and as, by the terms of the Spanish grant, the lines extended only to low water mark, as it was found at the date of the grant, the proprietors are entitled to riparian rights accordingly; and upon authority, as well as upon principle, we think that the correct rule in relation to these rights, is the one insisted on by the defendants in error; that the lines should be drawn from the termination of the river lines, as they existed in 1807 at the date of the grant, perpendicularly to the channel of the river. No other rule would do justice between the riparian proprietors, by giving to each his proportionate front of the lands gained by alluvion. Deerfield v. Arms, 17 Pick. 41.

It results from these views, that the south boundary of the Orange Grove tract was the line marked by Collins as such in 1802, extended without variation or deflection to the channel of the river at the date of the grant in 1807; and that a line drawn from that point to low water mark at the time of the trial, at right angles with the channel, is the line to which the proprietors were entitled to claim riparian rights in that direction; that the only question for the jury, in relation to the boundary of this grant, was simply to locate this line, to ascertain where it ran; and that any evidence

718 ALABAMA.

Magee v. Doc ex dem. Hallett & Walker et al.

which did not estop the defendant below from claiming this line, and which was offered for the purpose of showing that some other than the line run by Collins was the true south line of the Orange Grove grant, was inadmissible, and should have been rejected.

It also follows, necessarily, that as the line marked by Collins was the true south line of the Orange Grove grant, the charge requested by the defendant below, which asserts this as a legal proposition, should have been given.

It appears from the bill of exceptions, that evidence was offered tending to show that the land embraced by the Baudain concession was claimed by the proprietors under the Price grant; that the survey of that claim was made by James, the United States surveyor, by the procurement of Joshua Kennedy; that its adoption in the land office was urged by him; that it was recognized by the government; that the patent certificate, and the patent for the Price claim which was taken out and recorded by Kennedy, fixed the Collins and Henshaw south line as the north line of the Price tract; and that this line was recognized by the Kennedys, in their maps, surveys, &c. If these facts were established to the satisfaction of the jury, we consider that both the United States and the Kennedys were imperatively bound by the line which they had thus adopted and recognized. The Price claim was inchoate and incomplete, and its location and survey were provided for by the acts of 1822 and 1829 (3 U. S. Statutes at large 700; 4 ib. 359;) and as by this survey the south line of the Orange Grove tract, as run by Collins and Henshaw, was adopted as the north boundary of the Price grant, and the United States and the Kennedys having agreed to this survey, they must be regarded as parties to the selection of the land according to it, and are mutually bound and respectively estopped by it. Menard v. Massey, 8 How. 293–313.

It is supposed by the counsel for the defendants in error, that this view is in opposition to the decision of this court in the case of Hallett & Walker v. Hunt, *supra*; but on examination, a clear distinction will be found to exist between the two cases. In the case referred to, the plaintiff below claimed title under the Orange Grove grant, and the contro-

versy there was in relation to its boundaries. It was contended, that the boundaries of that grant were limited by the Weakley survey, made under the authority of the government. The court held, that as the Orange Grove claim had been acknowledged by Congress as a perfect grant, it took all that the grant called for, and was not limited by any survey made by the United States. Here, the controversy, in the aspect in which we are now considering it, is in relation to the location and boundary of the Price and Baudain claims, both of which are incomplete, and the location and survey of which are required by the act of Congress. There, no survey or location was necessary, and no act of recognition or acknowledgment on the part of the grantees to the limits of the Weakley lines established. In the present case, the United States and the grantees have made their location and survey in conformity with the requisitions of the act establishing the claims; it has been recognized by both parties, and they cannot, after this, be permitted to dispute it. We hold, therefore, that if the Price and Baudain claims were surveyed and located by their proprietors, and the survey recognized by the government and the Kennedys, these acts are conclusive evidence of the location of these claims, and both parties are bound by the lines which such surveys adopt. If these surveys recognized the line run by Collins. and Henshaw, as the north line of the Price and Baudain claims, it was, under such circumstances, conclusive evidence of the location of these tracts, as to their proprietors and the United States.

The charge of the court below in reply to the charges requested, was erroneous, as, instead of laying down the Collins line as the southern boundary of the Orange Grove grant, and instructing the jury to follow that line as marked by him, it left the question as to what was the boundary to be determined by the jury; and it also asserted an erroneous proposition, in relation to the line of the plaintiffs below. Both the Baudain and Price grants were confirmed subsequently to the admission of Alabama into the Union; and if the river was the eastern boundary of these grants, the lines could not, under the decisions of this court, as well as those of the Supreme Court of the United States, extend beyond

high water mark at that time. Pollard's Heirs v. Hagan, 3 Ala. 291; 3 Howard's S. C. R. 212; Abbot v. Kennedy, 5 Ala. 393; Pollard's Heirs v. Kibbe, 9 How. 471. The charge of the court was, in effect, that the line of the plaintiffs would go to low water mark at the date of the grant, and in this respect it was incorrect.

In rejecting the testimony of Innerarity, under the circumstances disclosed by the record, the court did not err. Innerarity was dead; and the witness by whom his evidence was sought to be established, while he states that he has no doubt that the whole of his testimony, in relation to the title of the premises sued for, was contained in the bill of exceptions from which it was offered to be read, also admits that there were other portions of his testimony, irrelevant to the title, which were not noted in the bill, and the substance of which he did not remember. The rule is, that where the evidence of a deceased witness is offered, the substance of his whole testimony must be proved. Gildersleeve v. Caraway, 10 Ala. 260; Tharp v. The State, 15 ib. 749. Such parts of it as are irrelevant, and have no bearing on the case, may doubtless be rejected by the court; but the party against whom the evidence is offered, is entitled to the substance of the whole testimony; and it is not for the witness who is offered to establish it, to determine upon the relevancy of the portions which he omits to prove. Such, in effect, would have been the decision of the court in admitting this evidence; the witness would have been substituted in the place of the judge, in determining that the portions of the evidence which he omitted to prove, were irrelevant to the title.

For the errors we have noticed, the judgment must be reversed, and the cause remanded.